UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACK A. WEST, JR., | No. 2:11-cv-1692 JAM CKD P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| RYAN PETTIGREW, et al., | |
| Defendants. | |

I. Introduction

Plaintiff is a prisoner proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on the Second Amended Complaint (SAC) filed October 28, 2013 (ECF No. 102-1), which was ordered served on two additional defendants, for a total of eleven defendants. (See ECF Nos. 130 at 2-4; 143.)[1] Plaintiff alleges that defendants violated his rights under the Eighth Amendment by refusing to provide him a lower bunk, despite a medical chrono[2] recommending that he be assigned to a lower bunk. (SAC.)

/////

---

[1] As of this time, the two additional defendants, R. Fisher and Vira, have not been served. (See ECF Nos. 150, 176.)

[2] "A 'chrono' is a collection of informal notes taken by prison officials documenting medical orders." Akhtar v. Mesa, 698 F.3d 1202, 1205 n. 1 (9th Cir. 2012).

1

Before the court is defendants' April 16, 2014 motion to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 139.) Plaintiff has filed an opposition (ECF No. 148), and defendants have filed a reply (ECF No. 149). Having carefully considered the record and the applicable law, the undersigned will recommend that defendants' motion be granted in part and denied in part.

II. Standards for a Motion to Dismiss

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts

which may be judicially noticed, <u>Mullis v. United States Bankruptcy Ct.</u>, 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, <u>Mack v. South Bay Beer Distributors</u>, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept legal conclusions "cast in the form of factual allegations." <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

III. <u>The SAC</u>

In the SAC, plaintiff alleges that defendants Pettigrew, Gayton, Ortega, Coyle, Brooks, Moore, Fisher, Broadman, and Williams were correctional officers at the California Medical Facility (CMF) during the relevant period in 2008 and 2009. (SAC ¶¶ 4-7, 9-12.) Defendant Tayson was a Captain at CMF, and defendant Vira was a Sergeant at CMF. (<u>Id.</u>, ¶¶ 8, 13.) Plaintiff was an inmate housed at CMF. (<u>Id.</u>, ¶ 3.)

In September 2008,

> [p]laintiff was issued a medical chrono indicating by his medical doctor that plaintiff suffers from mild degenerative joint disease of the lumber [sic] spine. He reported difficulty climbing up and down the upper bunk and has history of back pain. Hence he should preferably be housed on a lower bunk, so [sic] this is not a[] necessity, if a suitable bunk is unavailable at this institution he can be transferred to a facility that can meet his clinical needs. This chrono is valid for one year through September 1, 2009.

(<u>Id.</u>, ¶15.)

In September 2008, after receiving this chrono, plaintiff was housed on an upper bunk in Cell 325. (<u>Id.</u>, ¶ 16.) On separate occasions, plaintiff informed Pettigrew, Gayton, Ortega, and Coyle that "he had a medical chrono . . . that shows he is suppose [sic] to be housed on a lower bunk due to his lower back condition[.]" (<u>Id.</u>) The four officers "all agreed that the medical chrono was no good and refused to put in a move . . . with the housing sergeant." (<u>Id.</u>, ¶ 17.)

From September through November 2008, plaintiff gave Gayton his medical chrono, who returned it without "any resolution to issuing him a lower bunk." (<u>Id.</u>, ¶ 18.) Sergeant Vira was also shown plaintiff's medical chrono and "failed to honor it too." (<u>Id.</u>) During this period, plaintiff was "forced to climb up and down (with no [ladder]) from the top bunk and sleep on the top bunk[.]" (<u>Id.</u>)

3

On November 20, 2008, plaintiff asked defendant Coyle if he could go to his cell. Coyle said yes and opened plaintiff's cell door for him. While climbing to his upper bunk to retrieve a personal item, "plaintiff's back went out, causing plaintiff to fall on his lower back and left hip area, and causing plaintiff to injure[] his lower back and left hip area." (Id., ¶ 20.) Plaintiff yelled in pain, and Coyle pressed his alarm and "yelled man down." (Id., ¶ 21.)

After medical treatment in which he received pain medication and a wheelchair because he "could no longer walk," plaintiff was escorted back to his housing unit, "at which time [defendants Gayton, Coyle, and Ortega] continued to leave plaintiff to the upper bunk and failed to send the housing sergeant a 154 bed move or ma[ke] a request for plaintiff to be moved to a lower bunk." (Id., ¶¶ 22-23.)

On third watch, plaintiff informed a non-defendant correctional officer that he had a lower bunk chrono and had just fallen from the upper bunk. This officer filled out a 154 bed move form for him "but stated that [second] watch was suppose[d] to fill out a 154 bed move before they left." Plaintiff was rehoused to a lower bunk in a different cell, shared with another inmate. (Id., ¶ 24.)

A few days later, plaintiff was rehoused to another unit, Unit IV, "at which time plaintiff was informed that all cells in Unit IV were single-cell only and his cell was cell #106-S, an upper bunk only cell." (Id., ¶ 26.) Plaintiff informed Williams, Broadman, and Tayson about his lower-bunk chrono, and told Tayson that he could not be housed in cell 106 because it had no lower bunk, and he had recently fell from an upper bunk and needed a wheelchair cell. (Id.) Tayson "told plaintiff that there were no lower bunks available, and that he was not going to be in the cell long[.]" (Id. ¶ 27.) Plaintiff replied that this reason "did not make any sense" because he recently had been housed on a lower bunk. (Id.) Tayson "told plaintiff that he could not do anything about that because the prison is overcrowded and there just is [sic] no lower bunks," and left. (Id.)

Between November 24, 2008 through December 24, 2009, plaintiff informed Brooks, Moore, Williams, Broadman, and Fisher that he had a medical chrono for a lower bunk, but his cell did not have a lower bunk. (Id., ¶ 28.) Plaintiff "was forced to sleep on the floor, and had to

4

crawl on his knees to and from the cell, [which was not] ADA-compliant, causing pain to his left hip and lower back." (Id.)

Plaintiff was then moved to cell #110, "another upper bunk 'only' cell." (Id., ¶ 28.) "Plaintiff informed . . . Brooks, Moore, Williams, Broadman, and Fisher that this cell was no different from cell #106 and his [sic] is force [sic] to sleep on floor and crawl on his knees in pain, and this cell was not ADA complian[t]." (Id., ¶ 28.)

Plaintiff showed Brooks and Moore his medical chrono in the office, and "they told plaintiff that he had to sleep on the floor until a lower bunk opens up." When plaintiff protested, Brooks "told plaintiff to appeal the issue." Plaintiff then left the office. (Id., ¶ 29.)

Similarly, Williams, Broadman, and Fisher "told plaintiff that they could not do anything and plaintiff had to sleep on the floor, and to [sic] the best he could until a lower bunk opens up. Defendant Fisher told plaintiff to sue this place." (Id., ¶ 30.) After plaintiff was rehoused, he filed an appeal. (Id., ¶ 31.)

Brooks, Moore, Williams, Broadman, Fisher, and Tayson "did not get a 154 bed move for plaintiff to be housed in administrative segregation to a lower bunk." (Id., ¶¶ 33.)

Plaintiff claims that defendants violated his right to be free of cruel and unusual punishment under the Eighth Amendment, by showing deliberate indifference to a serious medical need. (Id. at 7-8.)

IV. Analysis

In screening the SAC, the undersigned noted that it was substantively the same as the First Amended Complaint (FAC), but corrected the names of two defendants and stated a claim against an eleventh defendant, Vira. (ECF No. 130 at 4.) In their motion, however, defendants argue that the SAC makes a crucial change to the allegations in plaintiff's prior two complaints. They write:

> In [his original complaint filed June 22, 2011], plaintiff claimed that 'Plaintiff was given a medical chrono that indicated that due to the medical condition of back pain, Plaintiff *must* be housed on a lower bunk.' (ECF No. 1 at 3 (emphasis added).) On May 24, 2012, plaintiff voluntarily amended his complaint, but kept this allegation substantially the same. He wrote, 'Plaintiff was issued a lower bunk indicating by his medical doctor that due to plaintiff [sic] back condition Plaintiff *should* be housed on a lower bunk and if a lower bunk is not accessible Plaintiff *should* be transferred to an

5

> institution suitable for his medical condition. (ECF No. 37 at 4) (emphasis added). . . .
>
> [The SAC] tells a different story. Plaintiff now explains that the chrono only stated that he should '*preferably* be housed in a lower bunk' and that he '*can* be transferred to [another] facility.' Plaintiff admits that the doctor advised that the lower bunk accommodation '*is not a necessity*.' (SAC at 3-4 (emphasis added.) This distinction – though subtle – devastates Plaintiff's case and compels immediate dismissal. Indeed, all of Plaintiff's claims rely on the mandatory nature of the chrono.

(ECF No. 139-1 at 2.)

As a preliminary matter, the court considers the effect of past rulings on the instant motion. On March 12, 2013, defendants' motion to dismiss the FAC for failure to state a claim was denied. (ECF No. 62.) While the findings and recommendations adopted by the district court cover largely the same ground as the instant findings (see ECF No. 58), defendants argue that the altered language in the SAC is a game-changer, warranting a second review of the sufficiency of plaintiff's allegations.

"Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." Richardson v. United States, 841 F.2d 993, 996 (9th Cir.1988) (citations omitted). For the law of the case doctrine to apply, "the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition." United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir. 2000). Defendants argue, in effect, that plaintiff's changed characterization of the chrono in the SAC is significant enough to make the law of the case doctrine inapplicable, such that the district court may reverse its previous finding that plaintiff's Eighth Amendment claims should go forward.

The court need not take plaintiff's word for what the chrono said, however.[3] Defendants attach – "for illustrative purposes" – a copy of the chrono obtained in discovery. (ECF No. 139-1 at 2, n.2.) Generally, in ruling on a motion to dismiss under Rule 12(b)(6), the court may not consider material outside the complaint. Schenider v. Cal. Dept. of Corr., 151 F.3d 1194, 1197

---

[3] In fact, in plaintiff's somewhat garbled transcription of the chrono, its meaning is unclear. See SAC ¶ 15.

(9th Cir. 2011) ("Ordinarily, the face of plaintiffs' complaint . . . and the exhibits attached thereto . . . would control the Rule 12(b)(6) inquiry.")  However, in ruling on a motion to dismiss, the court can consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading[.]"  Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Gailbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002); see also Steckman v. Hart Brewing Co., Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (on Rule 12(b)(6) motion, court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.")

Thus for purposes of ruling on the instant motion, the court considers the content of the September 2008 chrono itself, which states:

> The patient suffers from mild degenerative joint disease of the lumbar spine.  He reports difficulty climbing up and down the upper bunk and has a history of back pain.  Hence he should preferably be housed on a lower bunk.  However this is not an absolute necessity.  If a suitable bunk is unavailable at this institution, he can be transferred to a facility that can meet his clinical needs.  This chrono is valid for one year (through September 1, 2009).

(DeSantis Decl., Ex. A., ECF No. 139-2 at 4.) As the chrono includes the significant statement – not previously considered by the district court – that a lower bunk was "not an absolute necessity," the undersigned will review plaintiff's claims for sufficiency under Rule 12(b)(6) a second time.

A. Pre-Fall Claims

Plaintiff's allegations can be grouped into two periods, the first beginning in September 2008 after plaintiff received the chrono, but before he fell and was injured in attempting to reach his upper bunk.  These allegations involve defendants Pettigrew, Gayton, Ortega, and Coyle, all of whom were shown the chrono, agreed it "was no good," and "refused to put in a move . . . with the housing sergeant."  (SAC ¶¶ 16-17.)  They also involve defendant Sergeant Vira, who was shown the chrono and "failed to honor it."  (Id., ¶ 18.)

In Jett v. Penner, 439 F.3d 1091 (9th Cir.2006), the Ninth Circuit held that there is a two-pronged test for evaluating a claim for deliberate indifference to a serious medical need:

> First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong ... is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.

Id. at 1096 (internal quotation marks and citations omitted); see Akhtar v. Mesa, 698 F.3d 1202, 1213 (9th Cir. 2014) (same).

As to the first prong: "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." McGuckin v. Smith, 974 F.2d 1050, 1059-60, overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir.1997) (en banc).

In its order denying defendants' motion to dismiss the FAC ("West I"), the district court found that "[p]laintiff's allegations that a medical doctor issued a chrono for plaintiff to be housed in a lower bunk due to a back condition, and that he was instead housed on an upper bunk, are sufficient to meet the first prong of his Eighth Amendment claim." West v. Pettigrew, 2013 WL 85380 at *2 (E.D. Cal. Jan. 8, 2013). Similarly, the undersigned finds plaintiff to allege a medical condition that significantly affected his ability to climb up and down from an upper bunk, which in prison constitutes a "daily activity." Thus plaintiff meets the first prong of the deliberate indifference test.

As to the second prong, the court in West I found as follows:

> Viewed in the light most favorable to plaintiff, the allegation is that all four defendants [Pettigrew, Gayson, Coyle, and Ortega] agreed, *without foundation*, that plaintiff's medical chrono was "no good", and each of them refused to request a bed move for plaintiff. . . . Plaintiff's allegations are sufficient to support the second prong of his Eighth Amendment claim against defendants Pettigrew, Gayson, Coyle, and Ortega.

2013 WL 85380 at *3 (emphasis added) (some citations omitted).

/////

Here, in light of the chrono's admonition that a lower bunk was "preferabl[e]" but "not an absolute necessity," defendants had "foundation" for concluding that the chrono need not be acted on, such that their inaction did not rise to the level of deliberate indifference. See Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (negligence not enough to establish a constitutional violation), citing Estelle v. Gamble, 429 U.S. 97, 105-106 (1976). Thus the undersigned concludes that the SAC fails to state claims against defendants Pettigrew, Gayton, Ortega, Coyle, and Vira based on events up to and including plaintiff's fall.

B. Post-Fall Claims

On November 20, 2008, plaintiff's "back went out" while attempting to climb to his upper bunk. He fell and was subsequently given pain medication and a wheelchair, as he "could no longer walk." After plaintiff returned to his cell, Gayton, Coyle, and Ortega "continued to leave" him on the upper bunk and failed to "send the housing sergeant" a request for a bed move or a lower bunk for him; rather, they "left work." (SAC ¶ 23.)

In West I, the district court found plaintiff's allegations sufficient to plead that he "faced a substantial risk of harm from being housed in an upper bunk . . . [at] the time proximate to the fall." 2013 WL 85380 at *3. The exact content of the chrono matters less in these events than it did pre-fall, as it was clear from plaintiff's wheelchair that he could not climb to an upper bunk. In light of the law of the case doctrine, the undersigned will not disturb the district court's finding that plaintiff's claims should go forward against Gayton, Coyle, and Ortega based on their failure to address plaintiff's risk of harm after his fall.

Similarly, in the weeks following plaintiff's fall, the most salient facts about plaintiff's housing needs were that he had recently fallen and was in a wheelchair. Thus the exact wording of the chrono is not as important to the deliberate indifference analysis as it was prior to November 20, 2008. Based on alleged events in the three months after plaintiff's fall, the district court found plaintiff to state Eighth Amendment claims against defendants Tayson, Brooks, Moore, Fisher, and Broadman. 2013 WL 85380 at *3. In the SAC, plaintiff makes comparable allegations against defendant Williams. (SAC ¶¶ 28, 30.) In light of the law of the case doctrine, the undersigned will recommend that these claims go forward.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 139) be granted in part and denied in part, as follows:

    a. Defendants Pettigrew and Vira be dismissed from this action with prejudice;

    b. All claims against defendants Gayton, Ortega, and Coyle based on events prior to November 20, 2008 be dismissed; and

    c. Defendants' motion be otherwise denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 20, 2014

                                                /s/ Carolyn K. Delaney
                                                CAROLYN K. DELANEY
                                                UNITED STATES MAGISTRATE JUDGE

2 / west1692.mtd